IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEIS REALTY GROUP, Inc.** : | **CIVIL ACTION** |
| Plaintiff, : | |
| : | |
| v. : | NO.  24-1259 |
| : | |
| **AMPC REAL ESTATE LLC** : | |
| Defendant. : | |

**MEMORANDUM**

**MURPHY, J.**                                                                                      December 2, 2024

This case involves a breach of contract dispute between Geis Realty Group, a Pennsylvania-based real estate company, and AMPC Real Estate, an owner of real property in New Jersey.  The parties signed a commission agreement in which AMPC agreed to pay Geis for its work on a lease renewal for a commercial property in West Orange, New Jersey.  Geis claims that AMPC breached the agreement by failing to pay half of the commission owed.  AMPC moves to dismiss the matter for improper venue, or in the alternative, transfer the case to the District of New Jersey.  For the following reasons, we deny AMPC's motion.

**I.    BACKGROUND**

Geis is a real estate corporation with its principal place of business in Wayne, Pennsylvania.[1]  DI 1 ¶ 1.[2]  It is licensed to conduct brokerage business in Pennsylvania, New Jersey, and Texas.  DI 7-1 ¶ 4.  AMPC is a limited liability company with its principal place of business in West Orange, New Jersey.  DI 1 ¶ 2.  AMPC owns a commercial building located in

---

[1] We take judicial notice that Wayne, Pennsylvania is in Chester and Delaware Counties, within the Eastern District of Pennsylvania.

[2] We adopt the pagination supplied by the CM/ECF docketing system.

West Orange. *Id.* ¶¶ 9-10. Geis "was involved in and facilitated" lease renewal negotiations between the building tenant, Essex Specialized Surgical Institute, and AMPC. *Id.* ¶ 11. Geis's work over several months culminated in an executed lease amendment. *Id.* ¶¶ 14-15; DI 7 at 7; *see* DI 1-4.

For Geis's work on the lease renewal, Geis and AMPC executed a commission agreement in which AMPC agreed to pay Geis a commission of five percent (5%) of the aggregate rent due to AMPC under the amended lease. DI 1 ¶ 13. Amy Liu signed the commission agreement for AMPC and Paul Wolfson for Geis. *See* DI 1-3 at 7. Under the agreement, AMPC was to pay Geis a total commission of $319,643.57 in two equal installments. DI 1 ¶ 16. Geis alleges that AMPC paid the first installment of $159,821.79 on or about January 3, 2023, but failed to pay the second installment. *Id.* ¶¶ 17-21. Geis brings a claim for breach of contract. *Id.* ¶¶ 22-25.

AMPC moves to dismiss Geis's complaint for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a). DI 4. AMPC argues, *inter alia*, that: the property that is the "subject" of the action is located in New Jersey; Geis facilitated the commission agreement in accordance with its status as a broker licensed in New Jersey; and the agreement states that the law of New Jersey shall be governing law. DI 4-1 at 13-14. AMPC attaches to its motion a declaration from Ms. Liu, the "controlling member" of AMPC, stating that she was in New Jersey when she signed the commission agreement. DI 4-2 ¶¶ 3, 9. It also attaches a declaration from Dr. Kaixuan Liu, Ms. Liu's husband, who states that he was in New Jersey when he discussed the lease renewal and commission agreement with Mr. Wolfson by telephone. DI 4-3 ¶¶ 7-8.

Geis argues in response that venue is proper because Geis performed its obligations under the commission agreement in this district. DI 7 at 14-16. It submits a declaration from Dean Geis, the President of Geis Realty. DI 7-1. Mr. Geis states that Geis negotiated and executed the

2

commission agreement, and performed all work related to the lease renewal negotiations, at the Geis office in Wayne or employees' residences in the greater Philadelphia area.  DI 7-1 ¶¶ 9,13; DI 7 at 7.  He states that a Geis employee personally picked up the first commission payment check from the office of AMPC's real estate representative, G&E Real Estate Management Services, in Pennsylvania.  DI 7-1 ¶ 15; DI 7 at 7.[3]

## II.     STANDARD OF REVIEW

When deciding a motion to dismiss for improper venue, a court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits."  *Bockman v. First Am. Mktg. Corp.*, 459 Fed. App'x 157, 158 n.1 (3d Cir. 2012); *see Leone v. Cataldo*, 574 F. Supp. 2d 471, 483 (E.D. Pa. 2008).  Generally, if the court "examines facts outside the complaint to determine venue, the court . . . must draw all reasonable inferences and resolve all factual disputes in the plaintiff's favor."  *Manning v. Flannery*, No. 09-03190, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010); *see ProModel Corp. v. Story*, No. 07-3735, 2007 WL 4124502, at *1 (E.D. Pa. Nov. 19, 2007); *N. Am. Commc'ns, Inc. v. Eclipse Acqui Inc.,* No. 3:17-167, 2018 WL 651795, at *4 (W.D. Pa. Jan. 31, 2018).  The movant bears the burden of showing that venue is improper.  *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982); *Leone*, 574 F. Supp. 2d. at 483.

---

[3] The parties also assert various facts to support their arguments concerning AMPC's "residency" under 28 U.S.C. § 1391(b)(1), and thus the court's personal jurisdiction over AMPC. *See* 28 U.S.C. § 1391(c)(2) (stating that "an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction"). Because we do not rely on § 1391(b)(1) to decide venue, we do not restate those allegations here.

### III.    DISCUSSION

"In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). AMPC brings its motion pursuant to § 1406, which "applies where the original venue is improper and provides for either transfer or dismissal of the case." *Id.*; *see* DI 4-1 at 8. Under 28 U.S.C. § 1391(b), venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

AMPC argues that venue is improper under any of these criteria because AMPC is not a resident of Pennsylvania, "no event, act, or omission occurred in the Eastern District," and other proper venues, including the District of New Jersey, are available to Geis. DI 4-1. We determine that venue is proper under § 1391(b)(2).[4]

To decide whether a substantial part of the events or omissions giving rise to a cause of action occurred in a specific jurisdiction, "[t]he test . . . is not the defendant's contacts with a particular district, but rather the locations of those events or omissions giving rise to the claim." *Cottman v. Transmission Systems Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (internal quotations omitted); *Bockman*, 459 Fed. App'x at 161. Section 1391(b)(2) "favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial.'"

---

[4] Because venue is proper under § 1391(b)(2), we need not decide whether venue is also proper under § 1391(b)(1) or (b)(3).

*Cottman*, 36 F.3d at 294. Events or omissions with only "tangential" connections to the dispute are not sufficient. *Id.* at 294. "In assessing whether events or omissions . . . are substantial, it is necessary to look at the nature of the dispute." *Id.* at 295.

When assessing venue under § 1391(b)(2) in contract disputes such as this, courts in this district typically consider "where the contract was negotiated, executed, and performed and where the breach occurred." *Leone*, 574 F. Supp. 2d at 484 (citing *Bro–Tech Corp. v. Purity Water Co. of San Antonio, Inc.*, No. 08-371, 2008 WL 1757922, at *2 (E.D. Pa. Apr. 16, 2008)); *see Pulse Technologies, Inc. v. Dodrill*, No. 06-4549, 2006 WL 3589028, at *5 (E.D. Pa. Dec. 7, 2006); *see also Wall v. Corona Capital, LLC*, 221 F. Supp. 3d 652, 657-58 (W.D. Pa. 2016)*; Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 438 (D.N.J. 2015).

To begin, the alleged breach likely occurred in New Jersey, as that is the location from which AMPC, a New Jersey company, refused to pay the balance of the commission. *See Cottman*, 36 F.3d at 295 (holding in a contract dispute that a Michigan defendant's failure to return materials and remit payments occurred in Michigan, not Pennsylvania, "[e]ven though the result was [plaintiff's] non-receipt of those items in Pennsylvania").[5]

Because Geis and AMPC communicated via email and telephone, negotiations occurred in disparate locations. *See* DI 4-1 at 13; DI 7 at 6-7. AMPC argues that the commission agreement was "negotiated and signed" in New Jersey because Dr. Liu telephonically discussed

---

[5] Geis alleges that it personally picked up the first commission payment from G&E's office in Pennsylvania. DI 7 at 7; DI 7-1 ¶ 15. Geis submits a copy of the check, which shows a Pittsburgh, Pennsylvania address. DI 7-3. AMPC does not dispute this fact but asserts that the check was issued from Pittsburgh only because that is where G&E's accounts payable office is located. DI 8 at 5-6. Even if an aspect of AMPC's performance or alleged breach occurred in Pittsburgh, this does not support venue in this district, as Pittsburgh is not located in the Eastern District of Pennsylvania. *See* 28 U.S.C. § 1391(b)(2) (referring to "*a judicial district* in which a substantial part of the events or omissions giving rise to the claim occurred") (emphasis added).

lease renewal with Mr. Wolfson, and Ms. Liu signed the commission agreement, in New Jersey. DI 4-1 at 13; *see* DI 4-2 ¶ 9; DI 4-3 ¶ 7.  Geis alleges that it negotiated the terms of and executed the commission agreement at Geis offices or employees' residences in the Philadelphia area.  DI 7 at 6; DI 7-1 ¶ 13.

We agree with other district courts that when a business relationship is conducted via telephone or e-mail, "it cannot be said that a substantial part of the events occurred in one location or the other; rather it is more appropriate to say that a substantial part of the events occurred in both locations simultaneously." *Eclipse*, 2018 WL 651795, at *5 (quoting *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH,* No. 11-CV-2379, 2013 WL 3973975, at *12 (M.D. Pa. July 31, 2013)); *see Thrivest Legal Funding, LLC v. Gilberg*, No. 16-03931, 2017 WL 1208064, at *6 (E.D. Pa. Apr. 3, 2017) ("In the electronic age—where letters, faxes, and telephone calls are augmented by e-mails, instant messages, and tweets—it is increasingly likely that negotiation and execution of contracts take place in disparate locations." (quoting 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3806 (4th ed. 2017))).  AMPC does not provide any facts to dispute Geis's assertion that *Geis employees* negotiated the commission agreement in this district.  Therefore, negotiations occurred in the Eastern District of Pennsylvania.[6]

---

[6] The commission agreement could have been executed in this district or in the District of New Jersey.  The "place of contracting" is where "the last act to bring the agreement into legal effect" occurred.  *Frankel v. Johns-Manville Corp.*, 257 F.2d 508, 510 (3d Cir. 1958); *see Whipstock Natural Gas Services, LLC v. Trans Energy Inc.*, No. 2:08cv1084, 2008 WL 4287158, at *4 (W.D. Pa. Sept. 17, 2008) (finding that the contract was executed where defendant, the last party to sign the contract, did so); *Thrivest*, 2017 WL 1208064, at *6 n.4 (same).  The parties have not alleged any facts regarding the order of signatures.  The commission agreement, attached as Exhibit A to the complaint, is dated November 9, 2022 and depicts the signatures of Ms. Liu and Mr. Wolfson on the final page, but neither signature has a timestamp. DI 1-3 at 1, 7.  We cannot determine at this juncture where the agreement was executed.

Regarding performance, Geis alleges that it performed its obligations under the commission agreement — meaning, all work related to the lease renewal — at Geis offices in Wayne or employees' residences in the Philadelphia area. DI 7 at 16; DI 7-1 at 3. AMPC replies that the location of Geis's performance of the contract, "alone, is simply a tangential connection with the dispute." DI 8 at 11. We do not agree. While "events or omissions that might only have some tangential connection with the dispute . . . are not enough," *Cottman*, 36 F.3d at 294, Geis's performance here is not such an event. In the commission agreement, AMPC agrees to pay Geis "in consideration of the foregoing mutual covenants . . . and *for the efforts of the Broker in the event the proposed lease transaction is consummated*." DI 1-3 at 2 (emphasis added). Therefore, Geis's breach of contract claim directly depends on the fact that it completed work on the lease renewal project. *See Conlin & Co., LLC v. Taylor*, No. 19-2451, 2020 WL 564758, at *4 (E.D. Pa. Feb. 5, 2020) (holding that venue is proper because "plaintiff's claims center on the alleged breach of contract that was largely performed by plaintiff in Wayne, Pennsylvania"). Geis performed its obligations under, and negotiated, the commission agreement in the Eastern District of Pennsylvania. This is sufficient to find that substantial events or omissions giving rise to the claim occurred in this district.

Our conclusion mirrors other decisions in this district. In *Thrivest*, a Philadelphia finance company alleged that a New York-based personal injury attorney, Gilburg, failed to make required payments under the terms of five cash advance agreements. 2017 WL 1208064, at *1. The parties negotiated the agreements by telephone, email, text message, and fax with Thrivest in Pennsylvania and Gilberg in New York. *Id.* at *6. The court found that the agreements were breached and executed in New York, but "the entirety of Thrivest's obligations under the Agreements were performed in the Eastern District of Pennsylvania." *Id.* at *7. It held that

7

venue in this district was proper. *Id.*; *see also Nowicki v. United Timber Co*, No. CIV. A. 99-257, 1999 WL 619648, at *1 n.1 (holding that venue in the Eastern District of Pennsylvania was proper where plaintiff signed, executed, and negotiated the amended contract here, but defendant's failure to pay occurred in New York and the property at issue was located in the Middle District of Pennsylvania).

AMPC's argument that various events or omissions giving rise to the claim occurred in New Jersey — and that Geis's performance in this district was "predicated" on its license to conduct business in New Jersey — does not persuade us. *See* DI 8 at 10-12. Venue can be proper in more than one district. *Superior Precast, Inc. v. Safeco Ins. Co. of America*, 71 F. Supp. 2d 438, 444 (E.D. Pa. 1999); *see Jumara*, 55 F.2d at 878-79 (stating that venue is proper in the Eastern District and Middle District of Pennsylvania). The fact that activities giving rise to the claim also occurred in New Jersey does not disqualify this district as a proper venue, as long as the activities that occurred here were substantial. *See Superior Precast*, 71 F. Supp. 2d at 445 ("[T]his court need not decide which forum is the site of more substantial or significant events, only whether the forum in question itself is the site of such events.").

In addition, though the commission agreement states that New Jersey law shall govern the agreement, it does not contain a forum selection clause. DI 1-3 at 5; *see Whipstock*, 2008 WL 4287158, at *4 (distinguishing between a choice of law clause and a forum selection clause). AMPC has not met its burden to demonstrate that venue is improper. Because was determine that venue is proper in this district, we need not address whether transfer is justified under 28 U.S.C. § 1406(a).

IV.     **CONCLUSION**

For the foregoing reasons, AMPC's motion to dismiss for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a) or, alternatively, to transfer the case under 28 U.S.C. § 1406(a), is denied. Venue is proper in the Eastern District of Pennsylvania.